IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MICHAEL GRECCO PRODUCTIONS, INC.,

Plaintiff,

v.                                                            Civil Action No. 3:23cv516

BLACK CONNECTIONS LLC,

Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Plaintiff Michael Grecco Productions, Inc.'s

("Grecco Productions") Renewed Motion for Default Final Judgment Against Defendant (the

"Motion"). (ECF No. 21.) For the reasons that follow, the Court will grant in part the Motion.

### I. Factual and Procedural Background

A.    **Factual Background**[1]

Plaintiff Grecco Productions is a "celebrity photography agency, owned and operated by

award-winning photojournalist Michael Grecco, that is hired by top-tier media outlets to take

photographs of celebrities." (ECF No. 1 ¶ 6.) Michael Grecco, the owner of Grecco

Productions, photographs high-profile "musicians, actors, directors, Olympians, technologists,

comedians, athletes, fashion models and automobiles", and his photographs are featured in

---

[1] All of the following facts are drawn from Grecco Productions' Complaint and its
exhibits, as Defendant Black Connections LLC ("Black Connections") has not responded to the
Complaint. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (A party
in default "admits the plaintiff's well-pleaded allegations of facts, is concluded on those facts by
the judgment, and is barred from contesting on appeal the facts thus established.") (citation
omitted).

"some of the world's most prominent magazines, including but not limited to, *Vanity Fair*, *Rolling Stone*, *ESPN Magazine*, *Time*, *Forbes*[,] and *Esquire*." (ECF No. 1 ¶¶ 6–7.)

Grecco Productions "was formed in 1998 as 'Michael Grecco Photography, Inc.'" (ECF No. 1 ¶ 10.) "In 2012, the company name was formally changed to Michael Grecco Productions, Inc." (ECF No. 1 ¶ 10.)

### 1.    The Work at Issue

In 2002, Grecco Productions, then known as "Michael Grecco Photography, Inc.", created a photograph of former professional basketball player Lisa Deshaun Leslie (the "Work"). (ECF No. 1 ¶ 12.) On November 18, 2002, pursuant to 17 U.S.C. § 411(a),[2] Michael Grecco Photography, Inc. registered the Work with the Register of Copyrights. (ECF No. 1 ¶ 13; ECF No. 1-1, at 2.) The United States Copyright Office then issued Michael Grecco Photography, Inc. a Certificate of Registration that included the Work and gave the Work the registration number "Vau 590-445." (ECF No. 1 ¶ 13.)

### 2.    Black Connections' Use of the Work

Defendant Black Connections is incorporated in Virginia with both its principal place of business and registered agent in Chesterfield, Virginia. (ECF No. 1 ¶ 2.) Black Connections is a business "dedicated to '[r]ais[ing] awareness about black owned businesses in an effort to

---

[2] 17 U.S.C. § 411, "Registration and civil infringement actions", states, in relevant part:

(a) Except for an action brought for a violation of the rights of the author under section 106A(a), and subject to the provisions of subsection (b), no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title.

17 U.S.C. § 411(a).

increase profits and support through collaboration and promotion.'" (ECF No. 1 ¶ 15 (first

brackets in original).)  On July 7, 2019, Black Connections "published a copy of the Work on its

Facebook page." (ECF No. 1 ¶ 17.)  Black Connections uses its Facebook page to advertise its

business. (ECF No. 1 ¶ 16.)

Black Connections provided a lengthy caption alongside its July 7, 2019 posting of the

Work, noting that it was Ms. Leslie's birthday and describing her life and basketball career. (*See*

ECF No. 1 ¶ 17.)  Grecco Productions provided identical screenshots of the post in the body of

its Complaint, (ECF No. 1 ¶ 17) and as an exhibit to the Complaint, (ECF No. 1-2, at 2.)  A

portion of the caption is cut off in both screenshots.  The visible portion of the caption states:

> @blackfactsonline – Lisa Deshaun Leslie is an American former professional
> basketball player who played for the Los Angeles Sparks in the Women's
> [National] Basketball Association (WNBA) for her twelve-year career from 1997
> to 2009.  She is a two-time WNBA champion, three-time WNBA MVP, and a
> four-time Olympic gold medal winner.  Leslie was the first player to dunk in a
> WNBA game and was considered a pioneer and cornerstone of the league during
> her [W]NBA career.
>
> Lisa Leslie was born on July 7, 1972, in Gardena, California to Christine Lauren
> Leslie and Walter Leslie, a semi-professional basketball player.  Leslie's mother
> started her own trucking business to support her three children, while her father
> left the family when her mother was four months pregnant with her.  Leslie has
> two sisters, Dionne and Tiffany, along with a brother, Elgin.  By the time, Leslie
> was in middle school she had grown to over 6'1.  In the eighth grade, she
> transferred to a junior high school without a girls' basketball team and joined a
> boys' basketball team.  Leslie entered Morningside High School in Inglewood,
> California, in 1986 and while led the girl basketball team to two state
> championships.
>
> After high school, Leslie entered the University of Southern California where she
> played for the USC Trojans women basketball team from 1990 to 1994.  During
> her time with the Trojans, she played 120 college games, averaging 20.1 points
> per game, hitting 53.4 percent of her shots, and 69.8 percent of her free throws.
> She set the Pac-10 Conference records for scoring, rebounding, and blocked shots
> accumulating 2,414 points, 1,214 boards, and 321 blocked shots.  She also holds

the USC Single-season record for blocked shots (95).  Leslie helped the team win one Pac-10[.][3]

A screenshot of the posting is reproduced below:



(ECF No. 1 ¶ 17; ECF No. 1-2, at 2.)  The screenshot provided as an exhibit was created on February 16, 2023.  (ECF No. 1-2, at 2.)  The Complaint remains silent as to when or if the screenshot was removed from Facebook.

Black Connections has never sought permission from Grecco Productions to use the Work for any purpose, nor has Grecco Productions authorized Black Connections to use the Work for any purpose.  (ECF No. 1 ¶ 19.)  Grecco Productions contends that Black Connections "located a copy of the Work on the internet and rather than contact[ing] [it] to secure a license, simply copied the Work for its own commercial use."  (ECF No. 1 ¶ 21; *see also* ECF No. 1 ¶ 20

---

[3] The remainder of the caption is not visible in either screenshot provided by Grecco Productions.

(contending that Black Connections used the Work for commercial purposes to advertise its business.))

### 3.   Pre-Filing Communication

On December 14, 2021, Grecco Productions' owner, Michael Grecco, discovered the Work on Black Connections' Facebook page.[4]  (ECF No. 1 ¶ 22.)  "Following [this] discovery," on an unspecified date but before the August 15, 2023 filing of the Complaint, Grecco Productions "notified [Black Connections] in writing of such unauthorized use."  (ECF No. 1 ¶ 22.)[5]

### B.   Procedural Background

On August 15, 2023, Grecco Productions filed a one-count Complaint stating copyright infringement against Black Connections.  (ECF No. 1, at 6.)  In the Complaint, Grecco Productions seeks damages and injunctive relief based on Black Connections' unauthorized use of the Work.  (ECF No. 1 ¶ 36.)  Specifically, Grecco Productions requests the following relief in its Complaint:  (1) declaration of infringement; (2) declaration of willful infringement; (3) actual damages and disgorgement of profits, or, alternatively, statutory damages for willful infringement; (4) costs and reasonable attorneys' fees; (5) "interest, including pre[-]judgment

---

[4] Mr. Grecco states in his Declaration in Support of the Motion ("Grecco Decl.") that he discovered Black Connections' use of the Work through an online reverse image search.  (ECF No. 21-1, Grecco Decl. ¶ 11.)

[5] In his Declaration, Mr. Grecco does not specify which dates he or Grecco Productions notified Black Connections of its unauthorized use of the Work.  Instead, he writes that he "discovered [Black Connections'] unauthorized use/display of the Work on December 14, 2021." (ECF No. 21-1, Grecco Decl. ¶ 10.)  "Following [this] discovery, [he] retained counsel to pursue this matter", and "[i]t is [his] understanding that counsel sent an infringement notice via Federal Express and e-mail."  (ECF No. 21-1, Grecco Decl. ¶ 12.)  Furthermore, Grecco Productions does not explicitly state in its Complaint or its exhibits whether Black Connections responded in any form to these notices.

interest"; (6) a permanent injunction; and (7) any other relief that the Court deems proper.  (ECF No. 1 ¶ 36.)

On October 15, 2024, after previously concluding that Grecco Productions failed to properly serve Black Connections, (ECF No. 11, at 13), the Court issued a Memorandum Opinion extending Grecco Productions' deadline to effectuate service on Black Connections to November 14, 2024.  (ECF No. 16, at 1.)  On November 7, 2024, Grecco Productions returned Black Connections' executed summons to the Court reflecting a service date of October 21, 2024.  (ECF No. 17, at 1.)  Black Connections has not made an appearance nor filed a responsive pleading, and its time to do so has expired.  *See* Federal Rule of Civil Procedure 12(a).[6]

On November 26, 2024, Grecco Productions requested that the Clerk of Court enter default as to Black Connections.  (ECF No. 18.)  On December 3, 2024, the Clerk entered default

---

[6] Federal Rule of Civil Procedure 12(a) provides in relevant part:

(a) Time to Serve a Responsive Pleading.

Unless another time is specified by this rule or a federal statute, the time for serving a responsive pleading is as follows:

(1) *In General.*

(A) A defendant must serve an answer:

(i) within 21 days after being served with the summons and complaint; or

(ii) if it has timely waived service under Rule 4(d), within 60 days after the request for a waiver was sent, or within 90 days after it was sent to the defendant outside any judicial district of the United States.

Fed. R. Civ. P. 12(a)(1).

as to Black Connections.  (ECF No. 20.)  On January 22, 2025, Grecco Productions filed its

Renewed Motion for Default Final Judgment Against Defendant (the "Motion").  (ECF No. 21.)

In the Motion, Grecco Productions requests as relief:  (1) $95,712.00 in statutory

damages (three times the Work's $31,904 licensing fee); (2) Plaintiff's "costs"; (3) a permanent

injunction; and (4) "any other relief the Court deem[s] just and proper."  (ECF No. 21, at 12, 14.)

## II.  Standard of Review

### A.    Default and Default Judgment

Federal Rule of Civil Procedure 55 governs default judgment.  Rule 55(a) provides that

"[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or

otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the

party's default."  Fed. R. Civ. P. 55(a).  The party seeking entry of default judgment must then

"apply to the court for a default judgment."  Fed. R. Civ. P. 55(b)(2).

A defendant in default "admits the plaintiff's well-pleaded allegations of fact, is

concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus

established."  *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting

*Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

The clerk's entry of default does not itself warrant the Court's entry of default judgment.

*See Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 419 n.6 (4th Cir.

2010) (noting that "[e]ntry of default raises no protectable expectation that a default judgment

will follow") (quoting *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 785 (8th Cir. 1998)

(citation omitted)).  Rather, entry of default judgment is left to the discretion of the trial court.

*Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 203–04 (4th Cir. 2006) ("*Brake*").

Before entry of default judgment, the Court must determine whether the allegations of the

complaint support the relief sought. *See Brake*, 439 F.3d at 203. This is so because "[d]efault is a harsh measure because it ignores the merits," *Bogopa Serv. Corp. v. Shulga*, No. 3:08-CV-365 (MR), 2009 WL 1628881, at *3 (W.D.N.C. June 10, 2009), and "the Fourth Circuit has a 'strong policy that cases be decided on the merits.'" *State Employees' Credit Union v. Nat'l Auto Leasing, Inc.*, No. 2:06-CV-663 (JBF), 2007 WL 1459301, at *1 (E.D. Va. May 14, 2007) (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)).

Prior to entering a default judgment, the Court must ensure that: (1) it possesses personal jurisdiction over the defaulting party; (2) it possesses subject-matter jurisdiction over each of the claims; (3) the action is in the proper venue; and, (4) the defaulting party received proper service of process. *See Am. Auto. Assoc. v. AAA Auto Glass, LLC*, No. 1:14cv1072 (CMH/TCB), 2015 WL 3545927, at *1–2 (E.D. Va. June 3, 2015). The Court must also "determine whether the well-pleaded allegations in [Plaintiff's] complaint support the relief sought in this action." *Ryan*, 253 F.3d at 780. Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

## B.    Jurisdiction and Venue

A federal district court has subject matter jurisdiction over claims that arise under federal law, *see* 28 U.S.C. § 1331.[7] A court possesses personal jurisdiction over a defendant who has sufficient minimum contacts with the forum state, who is subject to the personal jurisdiction of

---

[7] Section 1331 states: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

the courts of the forum state, and who has received effective service of process. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945); Fed. R. Civ. P. 4(k)(1)(A).[8]  A business operating in Virginia has sufficient minimum contacts with this forum and is subject to the jurisdiction of the courts of Virginia. *See* Va. Code. § 8.01-328.1; Va. Code § 8.01-328.

Venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1).[9]  Furthermore, venue is proper in copyright cases "in the district in which the defendant . . . resides or may be found." 28 U.S.C. § 1400(a);[10] *see also Spencer v. Yellowcabservices.com*, No. 1:20cv368

---

[8] Rule 4(k) states, in pertinent part:

(k) TERRITORIAL LIMITS OF EFFECTIVE SERVICE.

(1) *In General.*  Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant:

(A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district is located.

Fed. R. Civ. P. 4(k)(1)(A).

[9] 28 U.S.C. § 1391(b)(1) provides:

(b) VENUE IN GENERAL.—A civil action may be brought in—

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located[.]

28 U.S.C. §1391(b)(1).

[10] 28 U.S.C. § 1400(a) provides:

(a) Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works or designs may be instituted in the district in which the defendant or his agent resides or may be found.

28 U.S.C. § 1400(a).

(TCB), 2020 WL 13200117, at *2 (E.D. Va. Nov. 19, 2020) (venue was proper pursuant to 28

U.S.C. § 1391(b) and 28 U.S.C. § 1400(a) where defendant, a Virginia LLC, "reside[d]" in the

Eastern District of Virginia").

### C.    <u>Service of Process on Virginia LLCs</u>

"The Federal Rules of Civil Procedure provide that service of process can be made on

corporations [or LLCs] by 'following state law for serving a summons in an action brought in

courts of general jurisdiction in the state where the district court is located or service is made'

[or] 'by delivering a copy of the summons and of the complaint to an officer, a managing or

general agent, or any other agent authorized by appointment or by law to receive service of

process.'" *J & J Sports Prods., Inc. v. Wing Bistro LLC*, No. 4:13CV31 (RBS), 2013 WL

6834645, at *3 (E.D. Va. Dec. 19, 2013) (citing Fed. R. Civ. P. 4(e)(1) & 4(h)(1)).  "It is well

settled that notice must be 'reasonably calculated, under all the circumstances, to apprise

interested parties of the pendency of the action and afford them an opportunity to present their

objections.'" *Id.* at *2 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314,

(1950)).  "The notice must be of a nature as to 'reasonably convey the required information.'"

*Id.* (quoting *Mullane*, 339 U.S. at 314.)

Virginia Code § 8.01–299[11] allows for service on LLCs in multiple ways.  Relevant here, Va. Code § 8.01–299(1) permits service by "personal service of any officer, director, or registered agent.'" *J & J Sports Prods., Inc.*, 2013 WL 6834645, at *3 (emphasis added).

### III. Analysis

Grecco Productions asserts that Black Connections infringed its copyright of the image assigned registration number "Vau 590-445" in violation of 17 U.S.C. § 501.  (ECF No. 1 ¶ 29.) The well-pleaded allegations in Grecco Productions' Complaint, deemed admitted as a result of default by Black Connections, satisfy the requirements for copyright infringement.  Therefore, the Court will order default judgment against Black Connections.

In its Motion, Grecco Productions requests:  (1) $95,712 in statutory damages; (2) "costs"; (3) that the Court "permanently enjoin [Black Connections] from infringing activities"; (4) that the Court "retain jurisdiction to enforce the Final Judgment and Permanent

---

[11] Va. Code § 8.01-299 provides:

Except as prescribed in § 8.01-300 as to municipal and quasi-governmental corporations, and subject to § 8.01-286.1, process may be served on a corporation or limited liability company created by the laws of the Commonwealth as follows:

1. By personal service on any officer, director, or registered agent of such corporation or on the registered agent of such limited liability company;

2. By substituted service on stock corporations in accordance with § 13.1-637, on nonstock corporations in accordance with § 13.1-836, and on limited liability companies in accordance with § 13.1-1018; or

3. If the address of the registered office of the corporation or limited liability company is a single-family residential dwelling, by substituted service on the registered agent of the corporation or limited liability company in the manner provided by subdivision 2 of § 8.01-296.

Va. Code § 8.01-299.

Injunction"; and (5) "any other relief the Court deem[s] just and proper." (ECF No. 21, at 12, 14.)

For the reasons articulated below, the Court will order that default judgment be entered against Black Connections. The Court will order Black Connections pay to Grecco Productions $2,250 in statutory damages. The Court will also permanently enjoin Black Connections and its employees from infringing Grecco Productions' copyrights. Furthermore, the Court will award post-judgment interest to be calculated in accordance with 28 U.S.C. § 1961, accruing from the date of this Memorandum Opinion and related Final Order. Because this relief sufficiently makes Grecco Productions whole and provides adequate deterrence, the Court will not also award costs or prejudgment interest.

## A.    The Court Has Jurisdictional and Statutory Authority to Render Default Judgment Against Black Connections

The requirements for entering default judgment against Black Connections have been satisfied. First, the Court properly exercises subject matter jurisdiction over this action because Grecco Productions' claims arise under the Copyright Act, 17 U.S.C. § 501. *See* 28 U.S.C. § 1331. Second, the Court has personal jurisdiction over Black Connections because it is a Virginia Corporation that has its principal place of business in Virginia. *See* Fed. R. Civ. P. 4(k)(1)(A); Va. Code. § 8.01-328.1; Va. Code § 8.01-328; *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945). For similar reasons, venue is proper because Black Connections resides within the Eastern District of Virginia. *See* 28 U.S.C. § 1391(b)(1); 28 U.S.C. § 1400(a); *Spencer*, 2020 WL 13200117, at *2.

Finally, pursuant to Federal Rule of Civil Procedure 4 and Virginia Code § 8.01–299(1), Black Connections was properly served. On October 21, 2024, Grecco Productions properly served Black Connections by hand delivering a copy of the Summons and Complaint to Black

12

Connections' registered agent, Sandra Lee Wilson. (ECF No. 17, at 1–2; *see* Va. Code § 8.01–299(1) (permitting service by "personal service on any officer, director, or registered agent of" a Virginia LLC).)

## B.    Grecco Productions' Allegations, Deemed Admitted, Establish that Black Connections Infringed on Its Copyright and Entitle It to Relief

Grecco Productions demonstrates entitlement to relief based on the well-pleaded facts in the Complaint. Grecco Productions alleges that (1) it successfully registered the Work with the Register of Copyrights, (ECF No. 1 ¶ 13); (2) it never authorized Black Connections to use the Work for any purpose, (ECF No. 1 ¶ 19); and (3) Black Connections included the Work in a post on its Facebook page. (ECF No. 1 ¶ 20.) These allegations sufficiently support Grecco Productions' claim that Black Connections infringed its copyright in violation of 17 U.S.C. § 501.[12]

The Copyright Act provides that a copyright owner has exclusive rights to its copyrighted works. *See* 17 U.S.C. §§ 101, 106(1), (3)–(5), 501. A copyright owner has the exclusive right to reproduce the works; distribute copies to the public by sale, rental, lease, lending, or other transfer of ownership; perform the works; or display the works publicly. *See id.* § 106(1), (3)–(5). Anyone who violates the copyright owner's exclusive rights is considered an infringer. *See id.* §§ 106, 501(a). To establish a claim of copyright infringement, a plaintiff must

---

[12] 17 U.S.C. § 501 provides in relevant part:

> (a) Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 or of the author as provided in section 106A(a), or who imports copies or phonorecords into the United States in violation of section 602, is an infringer of the copyright or right of the author, as the case may be.

17 U.S.C. § 501(a).

show (1) its ownership of a valid copyright for the allegedly infringed material and (2) "copying of constituent elements of the work that are original." *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (citation omitted).

A certificate of registration constitutes prima facie evidence of a valid copyright. *Universal Furniture Int'l, Inc. v. Collezione Europe USA, Inc.*, 618 F.3d 417, 428 (4th Cir. 2010). And, "[w]hen such a certificate exists, the burden shifts to the defendant to prove that the claimed copyrights are invalid." *Id.* (citation omitted).

Here, Grecco Productions has established that it owns the valid copyright to the photograph at issue. The company, through Mr. Grecco, created the Work and attached the certificate of registration to the Complaint. (ECF No. 1 ¶¶ 10, 13; ECF No. 1-1.)[13] The certificate of registration, bearing the registration number "Vau 590-445", provides that the effective date of registration for the work is November 18, 2002. (ECF No. 1-1, at 2.) Thus, Grecco Productions has proven that it owns a valid copyright for the Work and has the right to sue for copyright infringement.

Next, Grecco Productions has shown Black Connections committed copyright infringement. Black Connections violated Grecco Productions' copyright by copying the Work and posting it on its Facebook page. (ECF No. 1 ¶ 17.) Grecco Productions discovered the Work on December 14, 2021 with the post's time stamp indicating that Black Connections published the Work on July 7, 2019. (ECF No. 1 ¶¶ 17, 22.) The absence of any response from Black Connections to this lawsuit results in its failure to meet its burden, thereby solidifying the

---

[13] Grecco Productions "was formed in 1998 as 'Michael Grecco Photography, Inc.'" (ECF No. 1 ¶ 10.) "In 2012, the company name was formally changed to Michael Grecco Productions, Inc." (ECF No. 1 ¶ 10.)

facts alleged.  Accordingly, the Court concludes that Black Connections infringed on Grecco Productions' copyright.

### C.      Grecco Productions' Allegations Have Established Its Right to Receive Statutory Damages for Non-Willful Infringement

In its Motion, "[p]ursuant to 17 U.S.C. § 504(c),"[14] Grecco Productions "elects to recover statutory damages for [Black Connections'] infringement . . . and enhancement of its statutory award based upon the willfulness of such infringement." (ECF No. 21, at 11.)  Predicated on its position that Black Connections willfully infringed, Grecco Productions requests enhanced statutory damages "in the amount of $95,712.00 ($31,904.00 x 3) under 17 U.S.C. § 504(c)(2)" for willful copyright infringement. (ECF No. 21, at 12 (emphasis omitted).)  Grecco Productions arrives at this amount by asking the Court to apply a multiplier of three to the Work's $31,904 licensing fee. (ECF No. 21, at 10–12; ECF No. 21-1, Grecco Decl. ¶ 15.)

For the reasons articulated below, the Court finds that Grecco Productions' well-pleaded

---

[14] 17 U.S.C. § 504(c) provides, in pertinent part:

**(1)** Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just. For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.

**(2)** In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000.  In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200.

17 U.S.C. § 504(c)(1)–(2).

allegations, deemed admitted by virtue of Black Connections' default, fail to support a conclusion that Black Connections' infringement was willful.  The Court will award statutory damages of $2,250 (the minimal statutory amount, $750, for each of the three years of established infringement), and will permanently enjoin Black Connections and its employees from further violating Grecco Productions' copyrights.  The Court will also award post-judgment interest.

### 1. <u>Legal Standard: Statutory Damages</u>

Under the Copyright Act, an infringer can be held liable for either actual damages and profits or statutory damages. 17 U.S.C. § 504(a); *see X-It Prods., LLC v. Walter Kidde Portable Equip., Inc.*, 227 F. Supp. 2d 494, 527–28 (E.D. Va. 2002) (discussing statutory damages as an alternative to actual damages and profits).  In cases of willful infringement, the Court may award as much as $150,000 in statutory damages.  17 U.S.C. § 504(c)(2).

The Copyright Act affords courts significant discretion in determining the proper amount of statutory damages.  *EMI Apr. Music, Inc. v. White*, 618 F. Supp. 497, 508 (E.D. Va. 2009); *see also Spencer*, 2020 WL 13200117, at *4 ("should a copyright owner qualify for statutory damages, the Copyright Act affords the [c]ourt a great deal of discretion in determining the proper amount of damages.") (citing *EMI Apr. Music*, 618 F.Supp. 2d at 508).

When determining the proper amount of statutory damages, courts consider:  "expenses saved by the defendant in avoiding a licensing agreement; profits reaped by defendant in connection with the infringement; revenues lost to the plaintiff; and the willfulness of the infringement." *EMI Apr. Music*, at 509 (citing *Cross Keys Publ'g Co., Inc. v. Wee, Inc.*, 921 F. Supp. 479, 481 (W.D. Mich. 1995) (awarding statutory damages approximately 2.3 times greater than the licensing fee for three musical works due to defendant-restaurant's "blatantly willful

conduct" where defendant ignored plaintiff's repeated offers to license plaintiff's work and continued infringing conduct).  Courts may also "consider the goal of discouraging wrongful conduct." *Id.* (citing *F. W. Woolworth Co. v. Contemp. Arts*, 344 U.S. 228, 233 (1952)); *see Spencer*, 2020 WL 13200117, at *5 (E.D. Va. Nov. 19, 2020) (awarding enhanced statutory damages of $25,000 to "remediate [plaintiff's] harm and help deter future infringement").

### 2.    Legal Standard: Willful and Non-Willful Infringement

Although not outlined in the Copyright Act, courts have defined willful copyright infringement as the defendant having knowledge, "either actual or constructive, that its actions constitute an infringement, . . . or recklessly disregard[ing] a copyright holder's rights[.]" *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 799 (4th Cir. 2001) (quotation marks and citations omitted).

In the case of a non-willful infringement, "the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action . . . in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c).

### 3.    Grecco Productions Fails to Establish that Black Connections' Infringement Was Willful

Grecco Productions asks the Court to infer that Black Connections' infringement was willful by virtue of its failure to defend this action.  (ECF No. 21, at 7.)  Further, Grecco Productions contends that Black Connections "itself utilizes a copyright disclaimer on its website . . . indicating that [Black Connections] understands the importance of copyright protection." (ECF No. 1 ¶ 30.)  In support, Grecco Productions cites to cases that are not binding on this

Court, and which this Court finds unpersuasive in light of its commentary in *Gomez v. Midlo Floors LLC*, No. 3:22cv746 (MHL), 2024 WL 556650, at *8–*9 (E.D. Va. Feb. 12, 2024).[15]

As this Court recently stated in *Gomez*, within the Fourth Circuit, the support for inferring willful infringement solely by virtue of a defendant's default "is very thin." 2024 WL 556650, at *8–*9 (declining to find willful infringement solely due to defendant's failure to respond to plaintiff's complaint, and instead finding willful infringement where defendant infringed copyright even after receipt of multiple notices of infringement)*; see also Johnson v. Donation Funnel Project, Inc.,* No. 1:22cv00230 (MR), 2023 WL 6217752 at *6 (W.D.N.C. Sept. 25, 2023) (collecting cases).

When assessing the appropriate damages for copyright infringement after a default judgment, courts within this district typically cite to evidence in a complaint to support a finding of willful copyright infringement. *See, e.g.*, *Gomez*, 2024 WL 556650, at *8–*9 (citing evidence in plaintiff's complaint to support a finding of willful copyright infringement, rather than inferring willfulness due to defendant's default); *UMG Recordings, Inc. v. Kurbanov*, No. 1:18cv957 (CMH/TCB), 2021 WL 6492907, at *9 (E.D. Va. Dec. 16, 2021), *report and recommendation adopted*, No. 1:18cv957 (CMH), 2022 WL 20417526 (E.D. Va. Feb. 10, 2022) (same); *Spencer*, 2020 WL 13200117, at *5 (E.D. Va. Nov. 19, 2020) (same); *Malibu Media, LLC v. Doe*, No. 1:19cv519 (TCB), 2019 WL 7476684, at *4 (E.D. Va. Dec. 9, 2019) (same);

---

[15] In support of its contention that the Court should infer willful infringement due to Black Connections' default, Grecco Productions cites to *Broad. Music, Inc. v. Santoro, Inc.*, Civil Action No. WMN-16-399, 2016 U.S. Dist. LEXIS 51960, at *1-2 (D. Md. Apr. 19, 2016) (finding willful infringement by virtue of default without providing any legal support for this finding); *Fallaci v. The New Gazette Literary Corp.*, 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983); and *Original Appalachian v. Yuil Int'l Corp.*, 5 U.S.P.Q.2d (BNA) 1516, 1524 (S.D.N.Y. 1987). (*See* ECF No. 21, at 7.)

*Strike 3 Holdings, LLC v. Doe*, No. 1:21cv1140 (TCB), 2022 WL 3337797, at *5 (E.D. Va. 2022) (same). Accordingly, the Court will decline to infer willful infringement by virtue of Black Connections' default alone.

By its default, Black Connections admits only Grecco Productions' well-pleaded factual allegations—it does not admit conclusions of law, which include a determination of willfulness. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (citing *Thomson v. Wooster*, 114 U.S. 104, 113 (1885)). Thus, for the Court to have a basis on which to find willfulness, Grecco Productions bears the burden of providing either evidence of willfulness or specific factual allegations of willfulness that are admitted by default. For the reasons articulated below, the Court cannot conclude that Black Connections' infringement was willful.

Here, Grecco Productions provides the following allegations and evidence to support a finding of willfulness. First, Grecco Productions alleges that Black Connections "located a copy of the Work on the internet and rather than contact [Grecco Productions] to secure a license, simply copied the Work for its own commercial use." (ECF No. 1 ¶ 21.) In his Declaration, Mr. Grecco explains that the Work is "offered as stock on Plaintiff's website for $31,904.00 for a period of up to 3 years . . . or worldwide usage on the internet." (ECF No. 21-1, Grecco Decl. ¶ 14.) Within his Declaration, Mr. Grecco includes a screenshot of his website containing the Work, which the Court incorporates into this decision. (ECF No. 21-1, Grecco Decl. ¶ 14.) In this screenshot, the Work contains no watermark or other indication on the image itself that explicitly indicates that the Work belongs to Grecco Productions.

Mr. Grecco next states that on December 14, 2021, he discovered the Work on Black Connections' Facebook page through use of reverse image search tools while conducting a general search for his work that others may be using improperly. (ECF No. 21-1, Grecco Decl.

¶ 11.) Subsequently, Mr. Grecco attests that after retaining counsel, on dates he fails to identify, his "counsel sent an infringement notice [to Black Connections] via Federal Express and e-mail." (ECF No. 21-1, Grecco Decl. ¶ 12.)[16] Nowhere in the record does Grecco Productions clarify *when* these notices occurred.

Grecco Productions' allegations establish that the Work remained on Black Connections' Facebook page for *at least* three years and seven months—from July 7, 2019 through at least February 16, 2023. (ECF No. 1 ¶ 17; ECF No. 1-2, at 2.)   (ECF No. 1 ¶ 18; ECF No. 1-2, at 2 (providing that the screenshot of Black Connections' Facebook posting of the Work was captured on February 16, 2023).)[17]

Based on Grecco Productions allegations and the evidence provided, the Court is unable to make the legal conclusion that Black Connections' infringement of Grecco Productions'

---

[16] In its Motion, Grecco Productions further states, again without providing any specific dates, that it notified Black Connections of its infringement prior to filing this lawsuit by "telephone[] and voicemail." (ECF No. 21, at 7.) Grecco Productions did not include this allegation in its Complaint, nor is this allegation supported by Mr. Grecco's declaration. (*See* ECF No. 21-1, Grecco Decl. ¶ 12 ("Following my [December 14, 2021] discovery [of Black Connections' Facebook post of the Work], I retained counsel to pursue this matter. It is my understanding that counsel sent an infringement notice via Federal Express and e-mail.")

The Court cannot consider these allegations because "[i]t is well-established that parties cannot amend their complaints through briefing." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013). Even if the Court considered this additional fact, Grecco Productions still fails to identify the exact dates it contacted Black Connections.

[17] Grecco Productions and Mr. Grecco estimate that the Work remained on Black Connections' Facebook page "for at least [four] years." (ECF No. 21, at 9; ECF No. 21-1, Grecco Decl. ¶ 14.) The Court is unable to credit this conclusion where the allegations provided only establish that the Work remained on Black Connections' for at least three years and seven months—from July 7, 2019 through at least February 16, 2023. (ECF No. 1 ¶ 18; ECF No. 1-2, at 2.) The Complaint is silent as to when or if the image was removed from Facebook. Nonetheless, Grecco Productions contends that its three-year license of $31,904 "is the most accurate measure of [its] actual damages based on presently-known facts." (ECF No. 21, at 10.)

copyright was willful. For infringement to be willful, the infringer must have "either actual or constructive" knowledge "that its actions constitute an infringement". *See Lyons P'ship, L.P.*, 243 F.3d at 799–800 (internal quotation marks and citation omitted) (no willful infringement even where defendant received cease-and-desist letter). Here, while Grecco Productions has established that it owns the Work, the record does not establish that Black Connections had either actual or constructive knowledge that its actions constituted an infringement. While Grecco Productions alleges that it notified Black Connections of the infringement, the record is silent regarding whether this notification occurred before or after February 16, 2023, approximately six months before the initiation of this case and the latest known date in the record that the Work remained on Black Connections' Facebook page. On these facts, Grecco Productions leaves the Court guessing as to whether Black Connections continued its infringement of the Work even after Grecco Productions notified it of its infringement.

Furthermore, the Work contains no watermark or other indication that the Work belongs to Grecco Productions. Grecco Productions alleges that Black Connections "located a copy of the Work on the internet and rather than contact [it] to secure a license, simply copied the Work for its own commercial use." (ECF No. 1 ¶ 21.) Grecco Productions' vague allegation that Black Connections "located a Copy of the Work on the internet" does not support an inference that Black Connections necessarily found the work on Grecco Productions' website. Because the photograph lacks a watermark, the allegations also fail to support an inference that, before Grecco Productions' pre-litigation notices, which could have occurred after February 16, 2023, Black Connections had actual or constructive knowledge that Black Connections owned the copyright to the Work. *See Banilla Games, Inc. v. Russell Charles Hines*, No. 2:22CV212 (RJK), 2022 WL 17085953, at *5 (E.D. Va. Oct. 31, 2022), *report and recommendation adopted*

*sub nom. Banilla Games, Inc. v. Hines*, No. 2:22CV212 (RBS), 2022 WL 17084378 (E.D. Va. Nov. 18, 2022) (quoting 17 U.S.C. § 504(c)(1), (2).) (plaintiff failed to establish willful infringement where plaintiffs did "not allege[] any actions taken to notify [defendant] of the copyright infringement nor facts that [defendant] actually knew of the copyright"); *Gomez*, 2024 WL 556650, at *9 (willful infringement where defendant continued to infringe copyright even *after* notice of infringement); *EMI Apr. Music*, 618 F. Supp. 2d at 509 (same).

On this record, the Court cannot conclude that Black Connections had actual or constructive knowledge of the copyright, or that it continued to infringe the Work even after notice of infringement. Grecco Productions has failed to satisfy its burden to establish that Black Connections' infringement was willful. The Court now turns to the appropriate amount of statutory damages for Black Connections' non-willful infringement.

### 4. The Court Will Award $2,250 in Statutory Damages for Black Connections' Non-Willful Infringement

Because Grecco Productions has failed to establish willful infringement, "the appropriate statutory damages range is $750.00 to $30,000.00 per infringement, as prescribed by section 504(c)(1)." *Banilla Games*, 2022 WL 17085953, at *5. Although the maximum damages award of $30,000.00 would approach Grecco Productions' three-year license of $31,904 for the Work, imposing a damages award anywhere near the statutory maximum would shock the conscience under these facts.

As a threshold matter, the Court is unable to credit Grecco Productions allegation that Black Connections used the Work "for its own commercial use." (ECF No. 1 ¶ 21.) While Grecco Productions' *well-plead* allegations are deemed admitted by virtue of Black Connections' default, "naked assertions of wrongdoing necessitate some factual enhancement within the

complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis*, 588 F.3d at 193 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

The Complaint provides that Black Connections is a business "dedicated to '[r]ais[ing] awareness about black owned businesses in an effort to increase profits and support through collaboration and promotion.'" (ECF No. 1 ¶ 15 (first brackets in original).)  Black Connections posted the Work on its Facebook page on Lisa Leslie's birthday along with a lengthy description of her life and basketball career. (*See* ECF No. 1 ¶ 17; ECF No. 1-2, at 2.)  Nowhere does the posting reference Black Connections' own business or reasonably imply that Black Connections was one of the "black owned businesses" that used the photograph "to increase profits."[18]  The posting also does not advertise any other business.

The Court is unable to draw a reasonable inference from this single Facebook posting that Black Connections posted the Work, i.e., a picture of Lisa Leslie, for commercial purposes. The well-pleaded allegations clearly establish only that the post spotlighted a famous Black athlete on her birthday.  Given the timing of the post, the reasonable inference is that the operator of Black Connections' Facebook page simply wanted to acknowledge Ms. Leslie's accomplishments on her birthday.  Any commercial value that Black Connections could have derived from this birthday post cannot be inferred both because Grecco does not allege any income that could be derived from the post, nor does it establish or estimate the number of people who actually viewed Black Connections' posting of the Work.  The record is silent regarding the number of likes or comments on the Facebook post.

On this record, the Court lacks any ability to infer if, and how, Black Connections could have generated any revenue at all in its birthday post. *See EMI Apr. Music*, 618 F. Supp. 2d at

---

[18] The Complaint does not specify whether Black Connections is black-owned.

509 (when calculating a damages award, a relevant consideration is the "profits reaped by defendant in connection with the infringement.")  This case materially differs from the vast majority of copyright infringement cases that, unlike here, provide an obvious link between the infringement and the infringer's profits. *See, e.g.*, *id.* at 501 (copyright infringement stemmed from unauthorized performance of three musical works at restaurant); *Gomez*, 2024 WL 556650, at *2 (copyright infringement stemmed from unauthorized use of a picture of the exterior of a home to advertise defendant's "bathroom remodeling services, residential general construction services, and exterior home remodeling.")  Grecco does not describe how Black Connections raises revenue at all.  It follows that a damages award closer to the lower end of the statutory range is appropriate here.

Similarly, on this record it is impossible to determine the true extent—if any—of the economic impact Grecco Productions suffered as a result of the Facebook post. *See EMI Apr. Music*, 618 F. Supp. 2d at 508 (when calculating a damages award, relevant considerations include the "expenses saved by the defendant in avoiding a licensing agreement" and the "revenues lost to the plaintiff.")  The record is bereft of any evidence of the extent of its lost revenue beyond offering Mr. Grecco's Declaration, in which he states that he would have charged Black Connections at least $31,904 to post the Work "in the manner alleged in the Complaint."  (ECF No. 21-1, Grecco Decl. at ¶ 15.)

As a threshold matter, in its Complaint, Grecco Productions alleges "no facts from which the Court could find the reasonableness of a [$31,904] licensing fee for its use of [the Work]." *Johnson*, 2023 WL 6217752, at *3.  Thus, Black Connections "admitted no such facts by way of its default." *Id.*  And even if Grecco Productions had so alleged, "[u]pon default, the well-plead allegations in a complaint as to liability are taken as true, . . . . the allegations as to damages are

not.'" *Id.* (quoting *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 422 (D. Md. 2005)). As such, for the Court to conclude that Grecco Productions lost $31,904 in revenue, it would need evidence supporting this contention. Here, Grecco Productions provides none. *See id.*

Grecco Productions also offers no evidence on which the Court could find that Black Connections would have been willing to pay $31,903 to license the Work. *See id.* (concluding that where the court was "left to guess as to what someone might be willing to pay to license [p]laintiff's work", even where the plaintiff "contend[ed] that he would have ordinarily charged a licensing fee of $2,500 for the photograph at issue", "[p]laintiff's claim that he lost $2,500 in revenue based on [d]efendant's infringement [was] entirely speculative.") This is especially true where Grecco Productions fails to plausibly allege that Black Connections used the posting for a commercial purpose. On this record, the Court cannot reasonably infer that Black Connections would have paid $31,904 to Grecco Productions for its use of the Work in its Facebook post in lieu of not making the post at all or finding an alternative picture of Ms. Leslie to acknowledge her birthday and achievements. Furthermore, Grecco Productions provides no well-plead allegations or evidence that the post diverted any business from it or that it diminished the value of the Work.[19] This also militates in favor of a lower award of statutory damages.

---

[19] Grecco Productions broadly asserts in its Motion that Black Connections' ability to use the Work "for its own commercial benefit without compensation to Plaintiff greatly impairs the market value of the work, since others competing in that business or in related business areas, will not want to obtain a license to Plaintiff's works if it is already associated with a competing business." (ECF No. 21, at 13.) Furthermore, Grecco Productions argues in its Motion that its "potential licensees . . . will not want to pay license fees . . . if they see other commercial enterprises taking and using [Grecco Productions'] photographs for its own commercial purposes without paying any fee at all." (ECF No. 21, at 13–14.) This argument offers limited persuasive value where, for the reasons articulated above, Grecco Productions fails to plausibly allege that Black Connections posted the Work for a commercial purpose.

With these considerations in mind, the Court also acknowledges that "'[s]tatutory damages are intended not merely for the restitution of profit or reparation of injury, but to deter wrongful conduct.'" *Johnson*, 2023 WL 6217752, at *5 (quoting *Graduate Mgmt. Admission Council v. Raju*, 267 F. Supp. 2d 505, 511 (E.D. Va. 2003)). The Court will award statutory damages at the low end of the statutory damages range of $750.00 to $30,000.00 per non-willful infringement. The Work remained on Black Connections Facebook page for *at least* three years and seven months—from July 7, 2019 through at least February 16, 2023. Furthermore, Black Connections failed to participate in this action. This failure impeded Grecco Productions' ability to conduct discovery regarding damages. Taking these factors into account along with all other well-plead allegations and considering all evidence provided regarding damages, the Court will award $2,250 in statutory damages—the minimum award of $750 per year that Grecco Productions has established that the image remained on Black Connections' Facebook page. This award strikes a balance in deterring copyright infringement while also acknowledging that there is no well-pled allegation or evidence that Black Connections profited in any way from its post of the Work, intended to use the Work for a commercial purpose, or diverted business away from Grecco Productions.

### D. Grecco Productions' Allegations Have Established Its Right to Receive Injunctive Relief

The Copyright Act provides that a court may grant injunctive relief to prevent the infringement of copyrights. *See* 17 U.S.C. § 502(a) ("Any court having jurisdiction of a civil action arising under this title may . . . grant temporary and final injunctions on such terms as it

may deem reasonable to prevent or restrain infringement of a copyright."). To obtain a permanent injunction, plaintiffs must show:

(1) that it has suffered an irreparable injury;

(2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;

(3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and

(4) that the public interest would not be disserved by a permanent injunction.

*Strike 3 Holdings*, 2022 WL 3337797, at *6 (quoting *Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007) (further citations omitted)). "Irreparable injury often derives from the nature of copyright violations, which deprive the copyright holder of intangible exclusive rights." *Christopher Phelps & Assocs., LLC*, 492 F.3d at 544.

Grecco Productions has established that Black Connections violated its copyright by posting the Work on Facebook page, causing it irreparable harm, and any continuing infringing conduct would continue to cause such harm. *See Gomez,* 2024 WL 556650, at *8, *10 (finding irreparable harm where defendant downloaded plaintiff's copyrighted work from plaintiff's website and posted the work on defendant's website in an advertisement, even where plaintiff failed to "establish[] or even estimate[] the number of people who actually viewed the [copyrighted work]"); *Strike 3 Holdings*, 2022 WL 3337797, at *6 (finding irreparable harm where defendant "downloaded and distributed Plaintiff's works globally [online]", and where it was not possible to trace the extent and magnitude of the damage where defendant "continue[d] . . . to distribute these works" online).

Grecco Productions further claims that it has no remedy at law that could adequately compensate it. (ECF No. 21, at 13.) Courts have held that when a plaintiff has effected personal

service on a defendant, and the defendant "fail[s] to respond in any way[,] . . . [t]his lack of an appropriate response demonstrates that there is a near certainty of continuing copyright infringement[.]" *Malibu Media, LLC*, 2019 WL 7476684, at *6. Black Connections' lack of response to this lawsuit "shows that [Black Connections is] unlikely to cooperate with [Grecco Productions'] requests absent the Court's issuance of injunctive relief." *See id.* While Grecco Productions notes in its briefing that Black Connections removed the Work at some point after February 16, 2023, Grecco Productions still requests a permanent injunction to prohibit the continued use in any of way of "any works derived or copied from Plaintiff's copyrights photograph." (ECF No. 21, at 14.)

Courts finding a lack of adequate remedy, however, have generally evaluated a claim of a repeat or a "habitual infringer." *Id.* at *2; *see also EMI Apr. Music, Inc.*, 618 F. Supp. 2d at 509 (observing that defendant ignored offers of a license to play the music and "continued to play copyrighted music without proper authorization"). Reasonably read, Grecco Productions attests to continued infringement for at least three years and seven months. Given Black Connections' failure to respond to this lawsuit, the Court finds that Grecco Productions lacks an adequate remedy at law, especially with respect to future reuse of the Work.

The balance of hardships weighs in Grecco Productions' favor. The only hardship Black Connections "would suffer from a permanent injunction would be the requirement to follow clearly established copyright law." *See Malibu Media, LLC*, 2019 WL 7476684, at *6. In contrast, in the absence of injunctive relief, Grecco Productions could face future lost profits and infringement of its rights under the Copyright Act.

Finally, the public interest would not be disserved by issuing a permanent injunction. "[T]he public interest reflected in the Constitutional protection of copyright, and the

congressional enactment of the Copyright Act, is enhanced by issuance of a permanent injunction where copyright infringement has taken place." *EMI Apr. Music*, 618 F. Supp. 2d at 511.

Accordingly, the Court concludes that the issuing of a permanent injunction against Black Connections and its employees against any use of the Work is the best means to prevent future harm to Grecco Productions. Specifically, the Court will enjoin Black Connections and its employees from further violating Grecco Productions' copyrights, including the Work.

### E.     The Court Will Not Award Costs or Attorney's Fees

Under the Copyright Act, a "court in its discretion may allow the recovery of full costs by or against any party," and a "court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. Courts are not required to award attorney's fees and costs to the prevailing party as a matter of course.

Rather, it is wholly in the Court's discretion whether to award these damages. *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994). "The Fourth Circuit and other courts in the Eastern District of Virginia have generally awarded reasonable attorney's fees for copyright infringement cases." *EMI Apr. Music, Inc.*, 618 F. Supp. 2d at 512 (citing to *Diamond Star Bldg. Corp. v. Freed*, 30 F.3d 503, 506 (4th Cir. 1994) and *Music City Music v. Alfa Foods, Ltd.*, 616 F. Supp. 1001, 1003 (E.D. Va. 1985)); *see also Strike 3 Holdings*, 2022 WL 3337797, at *7 (observing that "[c]ourts routinely award costs to a successful plaintiff on default judgment, especially when the defendant committed willful copyright infringement"). Of course, as previously noted, this case diverges from the vast majority of copyright infringement cases where here, there is no obvious link between the infringement and the infringer's profits.

To "determine whether an award of attorney's fees should be made to a party under 17 U.S.C. § 505", courts consider the following factors: (1) "the motivation of the parties"; (2) "the objective reasonableness of the legal and factual positions advanced"; (3) "the need in particular circumstances to advance considerations of compensation and deterrence"; and (4) "any other relevant factor presented." *EMI Apr. Music*, 618 F. Supp. 2d at 512 (citing *Diamond Star Bldg. Corp.*, 30 F.3d at 505).

The Court concludes that it will not award costs and attorney's fees. First, regarding the motivation of the parties, Grecco Productions' motivation in bringing this suit was to vindicate its rights under the Copyright Act. But the Court cannot credit Grecco Productions' bare allegation that Black Connections used the Work for a commercial purpose. (ECF No. 1 ¶¶ 20–21.) *See Ryan*, 253 F.3d at 780 (requiring a court considering a default motion to determine whether a plaintiff's well-pleaded allegations support the relief sought). As stated above, this record allows the Court only to consider the Facebook posting at face value as a spotlight on a famous Black athlete on her birthday, but not more. Deciding what commercial value that Black Connections could have derived from such a posting, if any, would require speculation.

Second, regarding the objective reasonableness of the legal and factual positions advanced, Grecco Productions does not provide any case law or argument that specifically addresses why the Court should exercise its discretion to award Grecco Productions its costs in addition to statutory damages. Nor does Grecco Productions identify in its Motion the specific amount of costs or the categories of costs it seeks to recover.

Third, the Court considers the need to advance considerations of compensation and deterrence. The Court acknowledges that Grecco Productions attempted to place Black

30

Connections on notice that it had infringed its copyright. Grecco Productions does not explicitly

state in its Complaint whether Black Connections responded in any form to these notices. Black

Connections has, however, failed to respond in any way to this lawsuit. Nonetheless, the need

for deterrence is not furthered by awarding costs where the Court is already awarding $2,250 in

statutory damages for a single image used as a Facebook birthday post. Moreover, the Court

permanently enjoins Black Connections and its employees from further violating Grecco

Productions' copyrights. Notably, it is unclear on this record if, and how, Black Connections

generated revenue from posting the Work on its Facebook page. *See EMI Apr. Music*, 618 F.

Supp. 2d at 508 (when calculating a damages award, a relevant consideration is the "profits

reaped by defendant in connection with the infringement.") Fourth, no other relevant factors

impact the Court's analysis. *See EMI Apr. Music*, 618 F. Supp. 2d at 512; *see also Gomez*, 2024

WL 556650, at *11.

Pursuant to 17 U.S.C. § 505, the Court exercises its discretion to decline an award of

costs or attorneys' fees under these circumstances.

### F.    The Court Will Not Award Prejudgment Interest, but Will Award Post-judgment Interest

Grecco Productions explicitly requests "interest, including prejudgment interest" in its

Complaint, (ECF No. 1 ¶ 36), and in its Motion does not explicitly request interest, but more

broadly requests "any other relief" that the Court "deem[s] just and proper", (ECF No. 21, at 14).

Although the Copyright Act does not explicitly reference the availability of prejudgment interest,

courts have previously found that "prejudgment interest is available in copyright infringement

claims." *Banilla Games*, 2022 WL 17085953, at *6 (emphasis removed) (citing *Tattoo Art, Inc.

v. TAT Int'l, LLC*, 794 F. Supp. 2d 634, 664 (E.D. Va. 2011), *aff'd*, 498 F. App'x 341 (4th Cir.

2012) (further citations omitted)). When considering whether to award prejudgment interest,

31

courts consider "fairness and Congressional intent." *Tattoo Art, Inc.*, 794 F. Supp. 2d at 664; *see also Banilla Games, Inc.*, 2022 WL 17085953, at *6 (same). Courts have discretion whether to award prejudgment in copyright infringement claims, and will decline to award prejudgment interest where such an award would not be consistent with fairness or Congressional intent. *See U.S. Payphone, Inc. v. Executives Unlimited of Durham, Inc.*, 931 F.2d 888, at *4 (4th Cir. 1991) (declining to award prejudgment interest where doing so was not necessary "to compensate the copyright owner" or to promote deterrence.)

"A court may also allow post-judgment interest 'on any money judgment in a civil case recovered in a district court.'" *Banilla Games, Inc.*, 2022 WL 17085953, at *6 (citing 28 U.S.C. § 1961(a)). Post-judgment interest is "calculated in accordance with 28 U.S.C. § 1961." *Id.* Courts may award post-judgment interest to ensure that a plaintiff receives the proper value of the damages awarded. *See, e.g., Gomez*, 2024 WL 556650, at *13 (awarding post-judgment interest in copyright infringement case where defendants failed to respond to lawsuit.)

Awarding post-judgment interest is proper here to ensure that Grecco Productions "'receive[s] the proper value of the damages awarded against [Black Connections].'" *Id.* at *13 (quoting *Banilla Games, Inc.*, 2022 WL 17085953, at *6.) Post-judgment interest is to be calculated in accordance with 28 U.S.C. § 1961. *See id.*

Awarding pre-judgment interest, however, is not necessary to adequately deter future copyright infringement or to make Grecco Productions whole. Black Connections violated Grecco Productions' copyright and failed to appear in this lawsuit. The Court has already determined that this record supports an award of $2,250 in statutory damages, a permanent injunction, and post-judgment interest. In light of considerations of fairness and Congressional

32

intent, an award of prejudgment interest is not necessary to make Grecco Productions whole, nor is it necessary to deter future copyright infringement. *See Payphone, Inc.*, 931 F.2d at 888.

### IV. Conclusion

For the foregoing reasons, the Court will grant in part the Motion. (ECF No. 21.)  First, the Court will order that default judgment be entered against Black Connections.  Second, the Court will order Black Connections to pay $2,250 in statutory damages.  Third, the Court will permanently enjoin Black Connections and its employees from further violating Grecco Productions' copyrights, including the Work.  Fourth and finally, the Court will order Black Connections to pay post-judgment interest to be calculated in accordance with 28 U.S.C. § 1961, accruing from the date of this Memorandum Opinion and related Final Order.

An appropriate Order shall issue.

Date: 6/10/25
Richmond, Virginia

_____
/s/
M. Hannah Lauck
United States District Judge

33